Taylor v. The State.

GEORGE TAYLOR v. THE STATE.

1. CRIMINAL LAW. *Swearing officer to attend jury.* If the record in a criminal case shows that the officer placed in charge of the jury "was duly sworn to attend to the jury according to law," it is sufficient.

2. SAME. *Malicious stabbing. Malice presumed. When.* The malice required to constitute malicious stabbing, is malice in its common law signification, and is presumed from the stabbing, and must be rebutted by proof showing circumstances which, if death had ensued, and if the defendant was free from fault in bringing about the difficulty, would have mitigated the offense from murder to manslaughter or excusable homicide, or left a reasonable doubt of the commission of the higher offense.

3. SAME. *Provocation. Question of fact for jury.* It is the duty of the court to inform the jury to what extent the passion must be aroused and reason obscured to reduce the grade of the offense, and it is essentially a question of fact for the jury to determine whether the provocation in the particular case was sufficient and reasonable.

---

FROM CLAY.

---

Appeal in error from the Circuit Court of Clay County.   W. N. McCONNELL, J.

E. L. GARDENHIRE for Taylor.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

George Taylor has appealed in error from a verdict and judgment against him for the malicious stabbing of G. W. Overstreet, the prosecutor.

The first ground relied on for a reversal is, that

the officer placed in charge of the jury was not prop-
erly sworn.    The record shows that the officer "was
duly sworn to attend the jury according to law."    It
is conceded that if the record had merely stated that
the officer was duly sworn, it would have been suffi-
cient, the presumption being that the proper oath was
administered.    The argument is, that the language of
the entry in this case shows the form of oath admin-
istered, viz., "to attend the jury according to law,"
and as the law prescribes a different form, and re-
quires something more than mere attendance on the
jury, there is a fatal error.    The argument is hyper-
critical.    The words used mean the same thing as if
the record had said that the officer appointed to at-
tend the jury was duly sworn according to law.    It
is only by wresting them from their plain and obvi-
ous sense that any other meaning can be given them.

It is next argued that the verdict is not sustained
by the testimony.    The stabbing and cutting are not
denied.    The prosecutor was badly cut by the de-
fendant across the arm, leg and breast, "some inches
in each place."    The prosecutor and the defendant
had been to a shooting match the previous day, the
prosecutor having a jug of brandy, which, it was said,
was taken by defendant from the place where he had
put it.    The parties met again the next morning, and
the defendant, at the request of the prosecutor, agreed
to go with him to a place named, where the prose-
cutor had some business to transact.    Some words
passed between the parties at this place about defend-
ant taking the jug.    After transacting his business at

the place to which they went together, the prosecutor
bought another jug of liquor, and also a pint bottle
of the same "perilous stuff," for "medicinal purposes."
Armed in this way, they started to go to the prose-
cutor's house.   On their way, according to the pros-
ecutor's story, the defendant asked to see his pistol,
fired it off and put it in his pocket.   Shortly after-
wards they got off their horses, and while the prose-
cutor was standing with his back to the defendant,
the latter came at him with a knife.   "I told him,"
says the prosecutor, "I was unarmed, got back a lit-
tle, and begged off, telling him I had nothing against
him."   Defendant put up his knife, and they got on
their horses and rode along to the residence of one
Roach, where the stabbing took place.

The difficulty occurred in the presence of Roach
and his son, but the elder Roach died before the
trial.   The testimony of the younger Roach corre-
sponds substantially with the evidence of the prosecu-
tor as to what then took place.   The witness says
that he and his father were sitting in the porch, and
saw the prosecutor and the defendant coming towards
them on horseback in an apparently peaceable manner.
The prosecutor asked witness' father if he had any
brandy, and received a negative reply.   The prose-
cutor then took the witness aside and asked if he
had a pistol, and witness replied, "no."   Prosecutor
said: "*They* raised a fuss with me on top of the
hill," and added, he would give his mare and saddle
for a pistol, the witness adds, "for five minutes,"
which the prosecutor denies.   Defendant came near

where they were standing, and said: "What are you doing, boys?" The prosecutor made no reply. Defendant then asked the witness why he had told the prosecutor that he (defendant) had stolen prosecutor's jug. Witness replied that he had not said so. Defendant then asked the prosecutor why he had told him so. The prosecutor denied that he had. Defendant retorted, "you did." Prosecutor, with an oath, said defendant was a liar, and added, "I will kill you," at the same time throwing the pint bottle of liquor at him. The bottle hit the brim of defendant's hat, and knocked the hat off. The defendant sprang at the prosecutor, and cut him three times with a knife. The witness separated them by kicking the prosecutor's horse, and making him move off. The defendant then threw two stones at the prosecutor, one of which hit him and the other his horse. It seems from these facts that the prosecutor was still on his horse, while the defendant was on foot. Both men had been drinking, and the prosecutor was drunk.

If the jury believed the prosecutor's statement of the previous attack upon him by the defendant, there would be evidence of malice to sustain the verdict. And even if the case rested entirely on the testimony of the other witness, the existence of malice might be found in the use of a deadly weapon upon inadequate provocation, or upon a provocation brought about by the defendant with the purpose of using the weapon: Nelson v. State, 10 Hum., 528. The malice required to constitute malicious stabbing, is malice in its common law signification. The law presumes such malice

from the stabbing, to rebut which the proof, either on the part of the State or the defendant, must show circumstances which, if death had ensued, would have mitigated the offense from murder to manslaughter, or excusable homicide, or left a reasonable doubt of the commission of the higher grade of crime: *Wright* v. *State*, 9 Yer., 342.

It is objected to the charge, that his Honor, in his full and clear explanation of the law of self-defense, said: "And the defendant must be free from fault in bringing about the difficulty." The objection is to the use of the word "fault," although it is conceded that the word is used in the same connection in the opinion of Judge Caruthers in *Rippy* v. *State*, 2 Head, 217. But the same word is used in the leading case of *Copeland* v. *State*, 7 Hum., 481, and is considered proper whenever the law of self-defense is defined. "The rule of self-defense," says Mr. Bishop, "is commonly stated in the American cases thus: If the individual assaulted, being himself without *fault*, reasonably apprehends death or great bodily harm to himself unless he kills the assailant, the killing is justifiable": 1 Bish. Crim. L., sec. 865. The word in this connection has as clear a legal sense as the same word has a popular meaning in common parlance. The whole subject has been recently before us in *Hull* v. *State*, at this term, and we refer to the opinion then delivered.

Exception is also taken to the following clause of the charge: "If the prosecutor threw the bottle at defendant with great violence, striking his hat, thus

greatly provoking him, so that, under the influence of
passion thus suddenly aroused, he fell upon him and
cut him, it is only an assault and battery, provided
you think the throwing of the bottle an adequate
provocation for the injuries inflicted." The objection
made in argument is, that the charge means that if
defendant fought from passion excited by an adequate
provocation he was guilty of an assault and battery
at all events, and if he pressed his violence beyond
his necessary defense, then he would be guilty of fel-
ony, though no malice intervened. But this is a con-
struction not justified by the language used, and di-
rectly in conflict with the whole charge on the subject
in the course of which the clause cited occurs. The
judge expressly says in this connection: "He (defend-
ant) will either be guilty of the felony charged or
the assault and battery, according as to whether he
was actuated by malice or sudden heat of passion."
He was moreover requested to charge, and did charge
as follows: "If the provocation by a blow be too
slight to reduce the killing to manslaughter, yet if
accompanied by words and gestures calculated to pro-
duce a degree of exasperation equal to what would be
caused by a violent blow from the prosecutor, the
stabbing under such circumstances would not be ma-
licious." The charge not only required malice to fix
the defendant with the crime, but defined the provo-
cation which would deprive the stabbing of the char-
acter of being malicious as favorably as the defendant
could possibly ask. It is essentially a question of
fact for the jury to determine, whether the provoca-

tion in the particular case was sufficient and reasonable. The duty of the court is to inform the jury to what extent the passion must be aroused and reason obscured to reduce the grade of the offense, and to say to them if they should find such provocation from the facts proved, and should further find that it did produce that effect in the particular instance, and that the homicide was the result of such provocation, it would reduce the grade of the offense: *Seals* v. *State*, 3 Baxt., 454; *Jackson* v. *State*, 6 Baxt., 461.

There is no error in the record, and the judgment must be affirmed.